UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAMID MIRKOOSHESH, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>MEHRDAD ELIE, et al.,<br><br>    Defendants. | Case No. 22-cv-07615-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 19, 20 |

Defendants Mehrdad Elie, ElieCorp, and Mehrdad Elie as Trustee of the Mehrdad Elie 2006 Revocable Trust (collectively, "the defendants") move to dismiss claims asserted by plaintiffs Hamid and Jackeline Mirkooshesh, stemming from a loan agreement between the parties that apparently soured. The motion to dismiss is GRANTED with leave to amend. The plaintiffs have not adequately alleged any of their claims arising under the federal Fair Debt Collection Practices Act ("FDCPA"), 42 U.S.C. § 1981, or 15 U.S.C. § 1691. Because the plaintiffs only invoke federal question jurisdiction, this means I lack jurisdiction over this matter. Although I will not fully consider the state law claims until jurisdiction is established, some issues with those claims are worth addressing before any additional motion work.

**BACKGROUND**

This dispute arises from two properties: a residential property located at 271 Spinnaker Street in Foster City, California, and a business property located at 25125 Mission Boulevard in Hayward, California. Compl. [Dkt. No. 1] ¶ 4. According to the complaint, the plaintiffs owned these properties and on July 15, 2006, executed a promissory note with ElieCorp for a $1,000,000 loan with an interest rate of 8% for an unspecified term. *Id*. ¶¶ 1, 11. As security for the promissory note, the defendants put a lien on both of the properties at issue. *Id*. ¶ 12.

The complaint alleges that Hamid Mirkooshesh "began making payments against the loan

immediately" and paid approximately $15,000 to $20,000 per month ("varying considerably") over 36 times over a 5-year period. *Id*. ¶ 13.  But, the complaint alleges, the plaintiffs never received a billing statement from the defendants. *Id*.  Instead, Elie's assistants would call Hamid Mirkooshesh and tell him "how much he needed to pay that week or month." *Id*.

In February 2019, Elie (who is described as a longtime family friend of the plaintiffs) allegedly convinced Hamid Mirkooshesh to put title to the plaintiffs' home in Elie's name. *Id*. ¶¶ 1, 15.  According to the complaint, Elie knew that Mirkooshesh and his former business partner "had a falling out" and "used this fact to intimidate" him, telling Mirkooshesh that "the former business partner could try to take plaintiffs' home and evict his family." *Id*. ¶ 15.  Elie allegedly promised Mirkooshesh that he would "merely hold title and whenever plaintiff wanted title back to refinance the property, [he] would deed it back to plaintiff." *Id*.  The complaint alleges that Mirkooshesh signed the deed over to Elie but "did not understand the legal implications other than the fact that defendant was holding title to protect plaintiffs' property rights." *Id*. ¶ 16.  Mirkooshesh also executed a deed in lieu of foreclosure. *Id*.

Later that year, in September, Elie allegedly convinced Mirkooshesh to put title to the business property in Elie's name, for the same reasons as he had with the residential property and with the same assurance that when Mirkooshesh "wanted title back to refinance the property, defendant would deed it back to plaintiff." *Id*. ¶ 21.  In June 2020, the plaintiffs worked with a bank to refinance the underlying mortgage, and told Elie that they needed the title back in order to complete the process. *See id*. ¶ 22.  The complaint alleges that Elie "refused and instead convinced plaintiff that [he] could give plaintiff a better deal." *Id*.  ElieCorp then offered the plaintiffs a "mortgage loan commitment" labeled as a fixed refinance over 60 months at a 4% interest rate. *Id*.[1]  The plaintiffs accepted the terms in late August 2020, and ElieCorp paid off the underlying mortgage. *Id*.

According to the complaint, the plaintiffs paid ElieCorp $9,000 two days after the

---

[1] Based on what appears to be a typographical error in the complaint, it is unclear if the alleged amount was $55,000 or $550,000.  *See* Compl. ¶ 22 (stating that the fixed refinance was in the amount of "$550,00").

2

execution of the new agreement. *Id*. ¶ 23. It further alleges that the plaintiffs made regular payments through December 2020: $9,500 on September 2, 2020; $9,000 again on September 8; and $9,000 each on October 7, November 10, and December 11, 2020. *Id*.

"At some point," Hamid Mirkooshesh told the defendants that he wanted the properties back in order to refinance them. *Id*. ¶ 18. The defendants allegedly refused to return either property. *Id*.

On February 17, 2021, the defendants allegedly sold the business property for $2,200,000. *Id*. ¶ 24. The complaint alleges that ElieCorp "carried approximately $700,000 of financing" for the buyers, and "added it against plaintiffs' indebtedness." *Id*. ¶¶ 24-25. The plaintiffs allege that the defendants fraudulently transferred title into their name and then sold the business property "in an attempt to circumvent California foreclosure processes which would have extinguished plaintiffs' debt." *Id*. ¶ 27.

On August 24, 2021, Hamid Mirkooshesh allegedly emailed the defendants' assistant and requested the entire loan agreement and payment history. *Id*. ¶ 14. It was then that the plaintiffs discovered that the defendants had been charging the promissory note at a 15% interest rate rather than the agreed-upon 8%. *Id*. ¶¶ 11, 14.

The plaintiffs continued to pay the mortgage and live at the residential property until spring 2022. *Id*. ¶ 19. In November of that year, the complaint alleges that Elie "evicted plaintiffs and their children from the home." *Id*. ¶ 20.

The plaintiffs brought this suit in December 2022, alleging 10 causes of action, including violations of the FDCPA, sections 1981 and 1691, and California law. Dkt. No. 1. The defendants then moved to dismiss the claims and strike certain allegations from the complaint. Dkt. Nos. 19, 20.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff

pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts her allegations as true and draws all reasonable inferences in her favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

### I. FDCPA

To state a claim under the FDCPA, a plaintiff must show: "(1) that he is a consumer; (2) that the debt arises out of a transaction entered into for personal purposes; (3) that the defendant is a debt collector; and (4) that the defendant violated one of the provisions of the FDCPA." *Datta v. Asset Recovery Sols., LLC*, 191 F. Supp. 3d 1022, 1028 (N.D. Cal. 2016) (citation omitted). The defendants challenge the last two elements, arguing that the plaintiffs have not sufficiently alleged that the defendants are "debt collectors" under the FDCPA, or that they violated any of its provisions. Mot. to Dismiss ("MTD") [Dkt. No. 19] 4:28-6:9.

The FDCPA defines a "debt collector" as

> any person who uses any instrumentality of interstate commerce or the mails in any

> business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). The defendants argue that the complaint: (1) never alleges that Elie is a debt collector, but rather "the alleged beneficiary and servicer[] of the relevant deed of trust"; and (2) never alleges that Elie is a debt collector in his capacity as trustee, as it describes the Elie Trust as "the entity in which defendant Elie and ElieCorp transferred titles of plaintiffs' primary residence." *Id*. at 5:3-10 (citing Compl. ¶¶ 6-7). And, they argue, although the complaint alleges that ElieCorp "is a company that regularly lends and collects consumer debts in their ordinary course of business on either their own behalf or that of others," the plaintiffs "offer no supporting averments other than these conclusory statements." *Id*. at 5:11-15 (citing Compl. ¶ 5). Moreover, the defendants contend, ElieCorp "is in fact a real estate company, not a debt collection company," "as readily confirmed by publicly available sources." *Id*. at 5:15-17. The plaintiffs gloss over this argument in their opposition, stating only that "defendants are also defined as debt collectors since they used ElieCorp as the entity who collected the debt from plaintiffs." Oppo. [Dkt. No. 30] 2:27-28.

The plaintiffs have not sufficiently pleaded that Elie was a debt collector under the FDCPA, either as an individual or as a trustee; the complaint's allegations regarding him focus on the deed of trust and title, not the collection of any debt. *See* Compl. ¶¶ 6-7. And the allegation that ElieCorp "regularly lends and collects consumer debts in their ordinary course of business on either their own behalf or that of others," is too conclusory to save the claim, in part because the complaint focuses on ElieCorp's collection of a debt owed to itself, not to "another," as required by the statutory language. *See* Compl. ¶ 5. Indeed, the promissory note attached to the complaint listed ElieCorp as the lender. *See id*., Ex. A. I am not convinced by the "publicly available sources" that the defendants reference—websites (ElieCorp's LinkedIn and Yelp pages) where users can generate their own content and, for example, describe their company in terms they choose—but whether ElieCorp is in fact a debt collector or instead a real estate company is a question for summary judgment or trial, not a motion to dismiss. *See* MTD at 5 n.2. But plaintiffs must plausibly allege that at least one of the defendants is a "debt collector" under the statute.

1     The FDCPA claim is DISMISSED.  Because additional allegations may resolve these deficiencies, I will give the plaintiffs the opportunity to amend.  If they do, they should link the alleged conduct that violates the FDCPA to the specific provision invoked for clarity's sake.

**II.     Section 1981**

"Section 1981 prohibits racial discrimination in the making and enforcement of private contracts," which includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Harrison v. Wells Fargo Bank, N.A.*, No. C-18-07824-WHA, 2019 WL 2085447, at *2 (N.D. Cal. May 13, 2019) (citation omitted); *see also* 42 U.S.C. § 1981(b).  To state a section 1981 claim in a non-employment context, a plaintiff must show that: (1) she is a member of a protected class; (2) she attempted to contract for certain services; and (3) she was denied the right to contract for those services.  *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006).  Although the Ninth Circuit in *Lindsey* considered a fourth element—"that such services remained available to similarly situated individuals who were not members of the plaintiff's protected class"—as other courts in this District have noted, the court has not expressly adopted it.  *See id.*; *see also Hall-Johnson v. City & Cnty. of San Francisco*, No. 21-CV-07770-SI, 2022 WL 16579305, at *4 (N.D. Cal. Nov. 1, 2022) (citing *Harrison*, 2019 WL 2085447, at *3 n.2).  At bottom, to prevail on a section 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."  *Comcast Corp. v. Nat'l Assn. of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

The defendants argue that the plaintiffs' section 1981 claim fails because they have not adequately alleged any attempt to contract for services or denial of the right to do so because of discriminatory animus.  MTD at 13:17-14:10.  In addition, the defendants contend, the plaintiffs do not "allege that the Iranian defendants treat non-Iranians more favorably."  *Id*. at 14:2-5.

The plaintiffs' opposition repeats the allegations in the complaint: that the defendants "interfered with plaintiffs' enjoyment of the benefits, privileges, terms and conditions of the contracts [the promissory note and deed of trust] because plaintiffs are Iranian," that the "defendant is also Iranian and knew that in plaintiffs' culture, a person with whom a contract is

6

made is to be trusted," that the "plaintiffs never thought to question the amount they were charged each month nor title being held in defendant's name because of their background," and that the "defendants knew this and took full advantage." *See* Oppo. at 5:11-16; Compl. ¶¶ 56-57.

This is not enough to state a section 1981 claim. The complaint does not allege that the plaintiffs were denied the right to contract for services or that but for the plaintiffs' race, they would not have suffered the loss of a legally protected right. *See Lindsey*, 447 F.3d at 1145; *Comcast*, 140 S. Ct. at 1019. And if the plaintiffs are required to plead that such services were available to similarly situated individuals who are not Iranian, the complaint is void of any such allegations. *See generally* Compl. The section 1981 claim is DISMISSED with leave to amend.

### III.  Section 1691

The Equal Credit Opportunity Act ("ECOA") makes it unlawful for "any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction" on the basis of race or national origin, among other characteristics. 15 U.S.C. § 1691(a)(1). To state a discrimination claim under the ECOA, a plaintiff must allege that: (1) she is a member of a protected class; (2) she applied for credit with the defendant; (3) she qualified for credit; and (4) she was denied credit despite being qualified. *Harrison*, 2019 WL 2515582, at *3 (citing *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039, 1045 (N.D. Cal. 2009)). Some courts have considered a fourth element: whether the defendant "continued to approve loans for similarly situated applicants or treated members not in the protected class more favorably." *Errico v. Pac. Cap. Bank, N.A.*, 753 F. Supp. 2d 1034, 1044 (N.D. Cal. 2010) (citing *Shiplet v. Veneman*, 620 F. Supp. 2d 1203, 1232 (D. Mont. 2009)).

According to the defendants, the complaint is "devoid of any allegation that [the plaintiffs] applied for credit and were qualified for credit," "that they were denied credit despite being qualified," or that "they were treated unfavorably compared to non-Iranians." MTD at 14:24-27. That is true. The complaint (and opposition) relies on the same conclusory allegations as the section 1981 claim: that the defendants "interfered with plaintiffs' enjoyment of the benefits, privileges, terms and conditions of the contracts because plaintiffs are Iranian," that Elie is "also Iranian and knew that in plaintiffs' culture, a person with whom a contract is made is to be

7

1   trusted," that they "never thought to question the amount they were charged each month nor title
2   being held in defendants' name because of their background," and that the "defendants knew this
3   and took full advantage." *See* Compl. ¶¶ 64-67; Oppo. at 5:24-6:6.  Nowhere do the plaintiffs
4   allege that they applied for credit with the defendants, qualified for credit, or were denied credit
5   despite being qualified.  *See Harrison*, 2019 WL 2515582, at *3.  Nor do they allege that the
6   defendants continued to approve loans for similarly situated applicants or treated non-Iranians
7   more favorably.  *See Errico*, 753 F. Supp. 2d at 1044.

As a result, the plaintiffs have not stated the basic elements of a section 1691 claim.  It is DISMISSED with leave to amend.

Having dismissed all of the plaintiffs' federal claims, I now lack subject matter jurisdiction.  *See* Compl. ¶ 2 (invoking federal question jurisdiction under 28 U.S.C. § 1331). Without it, I must dismiss the plaintiffs' complaint.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."). But because I am granting the plaintiffs leave to amend, I will also address some aspects of the state law claims to help streamline any future motion work.

**IV.  State Law Claims[2]**

The defendants levy numerous attacks against the plaintiffs' state law claims, but the opposition often only repeats allegations from the complaint without offering additional analysis or case law supporting the plaintiffs' point.  Should the plaintiffs file an amended complaint, and the defendants again move to dismiss, the plaintiffs should consider the substantive arguments made by the defendants and be prepared to show how an amended complaint plausibly alleges each required element of the asserted claims.

For example, a plaintiff must plead justifiable reliance to state a claim for fraud.  *See*

---

[2] Along with their motion to dismiss, the defendants filed a motion to strike certain allegations from the plaintiffs' fraud, unjust enrichment, constructive trust, and Unfair Competition Law ("UCL") claims.  Dkt. No. 20.  The crux of the defendants' argument is that some allegations within these claims arise from activity protected by California's anti-SLAPP statute: the defendants' unlawful detainer action in state court regarding the residential property.  *See id.*  It is premature to address the merits of the defendants' argument until an amended complaint is filed and jurisdiction is established.  The motion to strike is therefore DENIED as moot.

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1017-18 (N.D. Cal. 2018) (stating that fraud and negligent misrepresentation claims both require justifiable reliance). The complaint alleges that the parties entered into the loan agreement in July 2016, that the plaintiffs immediately began making payments, and did so over the next five years. Compl. ¶¶ 11-13. But it was not until August 2021—"five years into the life of the loan"—that Hamid Mirkooshesh "requested the entire loan agreement as well as the payment history." *Id*. ¶ 14. It was then that the plaintiffs allegedly discovered the 15% interest rate that forms a basis for their fraud claim. *See id*. ("Plaintiffs were shocked to find out that defendants had been charging the note at 15% for is entirety."); ¶ 49 (alleging that the defendants "committed intentional fraud by charging plaintiffs 15% [a] interest rate rather than the agreed upon interest rate of 8% as reflected in the promissory note").

"Reliance is 'justifiable' only when 'circumstances were such to make it reasonable for plaintiff to accept defendant's statements without an independent inquiry or investigation." *Philipson & Simon v. Gulsvig*, 154 Cal. App. 4th 347, 363 (2007) (citation omitted). As pleaded, the complaint fails to adequately explain why the plaintiffs did not ask about their payment history, request billing statements, or otherwise inquire into the interest rate for five years, despite making payments the entire time and their apparent inability to keep up with those payments. *See* Compl. ¶ 1 (alleging that it was "impossible for plaintiffs to keep up with payments on their loan").

As another example, the unjust enrichment claim fails because the plaintiffs do not appear to plead that they lack an adequate remedy at law. *See* Compl. ¶¶ 77-81. I have explained that under California law "a court may construe a claim for unjust enrichment as a quasi-contract claim seeking restitution." *Gagetta v. Walmart, Inc.*, No. 22-CV-03757-WHO, --- F. Supp. 3d ----, 2022 WL 17812924, at *10 (N.D. Cal. Dec. 19, 2022) (citing cases). However, as I have also written, "most district courts applying [*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020)] have also understood it to require that a plaintiff must, at a minimum, *plead* that she lacks adequate remedies at law if she seeks equitable relief." *Johnson v. Trumpet Behav. Health, LLC*, No. 21-CV-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) (citing cases) (emphasis

9

1   in original). The plaintiffs have not done this in their complaint.

2   Finally, the plaintiffs' eighth cause of action is asserted as a constructive trust. Compl. ¶¶
3   87-93. Under California law, a constructive trust is a remedy, not a cause of action. *See Arena*
4   *Rest. & Lounge LLC v. Southern Glazer's Wine & Spirits, LLC*, No. 17-CV-03805-LHK, 2018
5   WL 1805516, at *11 (N.D. Cal. Apr. 16, 2018) ("California law treats a constructive trust not as a
6   substantive device but merely as a remedy. California courts dismiss counts that plead a
7   constructive trust as a cause of action rather than a remedy.") (citations omitted); *see also Cline v.*
8   *Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1025 (N.D. Cal. 2018) ("A constructive trust is not an
9   independent cause of action but merely a type of remedy for some categories of underlying
10  wrong.") (citation and quotation marks omitted). The plaintiffs wholly ignore this argument from
11  the defendants and provide no case law compelling a different conclusion. *See* Oppo. at 7:24-
12  8:26. Instead, they repeat allegations from the complaint, summarily arguing that a "constructive
13  trust should be imposed." *See id.*; *see also* Compl. ¶¶ 88-91.

14  Again, it is premature to determine the plausibility of the plaintiffs' state law claims until
15  jurisdiction is established. I have pointed out only some apparent flaws in the pleadings. Should
16  the plaintiffs file an amended complaint that includes state law claims, they should clearly show
17  how each element of each claim is satisfied. Or plaintiffs could choose to litigate this case in state
18  court without the federal causes of action.

## CONCLUSION

20  The defendants' motion to dismiss is GRANTED with leave to amend. Any amended
21  complaint shall be filed by April 17, 2023.

22  **IT IS SO ORDERED.**

23  Dated: March 26, 2023



William H. Orrick
United States District Judge